FILED
2014 Jan-24  PM 02:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN EVANS ADAMS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:13-cv-00755-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION**, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff John Evans Adams brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court affirms the decision denying benefits.

### I. Procedural History

Adams filed his applications for Title II disability insurance benefits, (R.

111–12), and Title XVI Supplemental Security Income, (R. 113–116), on May 18, 2010, alleging a disability onset date of March 19, 2010, (R. 113), due to radial nerve palsy, sleep problems, arthritis, and drawn-up hands, (R. 124).  After the SSA denied his applications on July 16, 2010, (R. 67–71), Adams requested a hearing, (R. 72). At the time of the hearing on October 25, 2011, Adams was thirty-nine years old, (R. 30), had a tenth-grade education, (R. 45), and had past relevant very heavy, unskilled work as a construction worker, medium, semi-skilled work as a forklift operator, heavy, semi-skilled work as a material handler, and heavy, semi-skilled work as a team leader in the air-conditioner manufacturing industry, (R. 55–56). Adams has not engaged in substantial gainful activity since February 2, 2008.  (R. 124).

The ALJ denied Adams' claim on December 8, 2011, (R. 10–23), which became the final decision of the Commissioner when the Appeals Council refused to grant review on February 14, 2012, (R. 1–5).  Adams then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990). The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable

and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a

preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by

substantial evidence, the court must affirm the Commissioner's factual findings

even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review

of the ALJ's findings is limited in scope, it notes that the review "does not yield

automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Adams had not engaged in substantial gainful activity since his alleged onset date and therefore met Step One.  (R. 15).  Next, the ALJ acknowledged that Adams' severe impairments of degenerative arthritis and radial nerve palsy met Step Two. *Id*.  The ALJ then proceeded to the next step and found that Adams did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id*.  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Adams

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can stand 2 hours at one time, walk 1 hour at one time, and sit 4 hours at one time in an 8-hour workday. He can never climb ladders, ropes, or scaffolds. He can occasionally reach, handle, finger, and feel with the right hand. He

has unlimited ability to use the left hand. He should avoid
concentrated exposure to extreme cold, wetness, and humidity and
noise. He should avoid concentrated exposure to unprotected heights
and dangerous machinery.

(R. 16). In light of Adams' residual functional capacity ("RFC"), the ALJ

determined that Adams was unable to perform any past relevant work because his

"past relevant work exceeds the exertional limitations determined in . . . [his]

residual functional capacity." (R. 18). Lastly, in Step Five, the ALJ considered

Adams' age, education, work experience, and RFC, and determined, based on the

Medical Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix

2, section 201.28 and on the testimony of a vocational expert, that "there are jobs

that exist in significant numbers in the national economy that [Adams] can

perform." (R. 19). Because the ALJ answered Step Five in the negative, he

determined that Adams was not disabled. *Id*.

## V. Analysis

The court turns now to Adams' contentions that the ALJ erred because (1)

he failed to classify Adams' degenerative disc disorder ("DDD") as a severe

impairment, doc. 9 at 9–11, and (2) he improperly discounted the opinion of

Adams' treating physician, *id*. at 11–18. For the reasons stated below, the court

finds that the ALJ applied the correct legal standard and his opinion is supported

by substantial evidence.

A.    *Adams' degenerative disc disorder*

Adams first argues that the ALJ erred by failing to classify his DDD as a severe disorder, ignoring an MRI and records from both Dr. Madadi Reddy, Adams' treating physician, and Dr. Younus Ismail, a consulting physician, indicating that Adams suffers from the condition. Doc. 9 at 9–10 (citing (R. 196, 200, 205, and 233)). Consequently, Adams contends that "the ALJ's decision is not based upon substantial evidence and his decision is due to be reversed and benefits awarded." *Id*. at 10.

Adams is correct that the ALJ determined he only suffered from the severe impairments of degenerative arthritis and radial nerve palsy. (R. 15). However, the failure to classify Adams' DDD as a severe impairment does not mean the ALJ committed reversible error. Again, Step Two of the sequential process requires the ALJ to determine whether a claimant's impairments are severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that significantly limits the claimant's ability to do basic work activities. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). In this circuit, even if an ALJ errs in failing to indicate that a diagnosed impairment is severe, that error is harmless if the ALJ concludes that the claimant has another severe impairment because "that finding is all that step

two requires." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("the finding of *any* severe impairment" is enough to satisfy step two) (emphasis added)). Based on the case law, in light of the ALJ's finding that Adams has a severe impairment, which is all that is required to satisfy Step Two, the court rejects Adams' contention that the ALJ committed reversible error by failing to classify Adams' DDD as a severe impairment.

Alternatively, Adams argues that the ALJ erred by he failing to consider the impact of Adams' DDD on Adams' ability to work. Doc. 9 at 10. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8. Here, the ALJ clearly considered the impact of Adams' DDD on his ability to work. The ALJ noted that an x-ray of Adams' cervical spine, (R. 223), indicated Adams suffered from DDD with neural forminal narrowing at C5–6 and C6–7. The ALJ also noted that this finding was consistent with the findings of Dr. Ismail, who observed that Adams suffered from mild back spasms, but "no disabling limitations" stemming from his back condition because Adams' "forward flexion, extension, lateral flexion, and lateral rotation [were] within normal limits." Because the ALJ explicitly stated that Adams' back condition was not the source

of a disabling limitation, a finding that the substantial evidence supports, the record does not support Adams' contention that the ALJ failed to consider the impact of Adams' DDD on his ability to work.

B.    *Dr. Reddy's opinion evidence*

Adams next argues that the ALJ improperly discounted the opinions of Dr. Reddy, Adams' treating physician. Doc. 9 at 11–18. "[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). "'Good cause cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440). "When electing to disregard the opinion of a treating physican, the ALJ must clearly articulate its reasons." *Id*. (citing *Lewis*, 125 F.3d at 1440).

Dr. Reddy prepared a report assessing Adams' RFC. (R. 199–201). In it, Dr. Reddy stated that Adams could stand and walk for less than two hours total and sit for about two hours total during an eight-hour day. *Id*. Dr. Reddy also stated that Adams would need to shift at will from sitting, standing, or walking, *id.*, that he

would need to lie down "as much as he needs" during a work shift, (R. 200), and

that his impairments would cause him to miss work more than three times a month,

(R. 201).[1]

The ALJ clearly articulated his reasons for giving Dr. Reddy's RFC

assessment only partial weight:

> [T]here is simply no objective evidence to show limitations to the degree
> Dr. Reddy opined. He performed no diagnostic testing or referred the
> claimant for physical therapy or conferred with a neurologist, and noted no
> physical examination findings such as limitation of motion. He apparently
> relied on the claimant's subjective complaints and prescribed pain
> medication.

(R. 18). Substantial evidence supports the ALJ's reasoning. Dr. Reddy's RFC

assessment simply lists conclusory diagnoses in support of its findings. *See* (R.

200) (listing DDD, neural foraminal stenosis in the cervical and lumbar areas,

neuropathy, and weak right hand grip and numbness as "medical findings

support[ing] the [described] limitations"). Similarly, although the record indicates

that Adams attended monthly appointments with Dr. Reddy between July 2010

and September 2011, *see* (R. 181–98; 214–22), Dr. Reddy's records associated

with those visits contain little to no objective evidence supporting the degree of

_____

[1]  Adams contends that "[i]f given proper weight, the opinion of Dr. Reddy would render
Plaintiff 'disabled' based on the fact that Dr. Reddy doesn't allow for a full 8-hour workday, and
the fact that Plaintiff would need to lie down 'as much as he needs.'" Doc. 9 at 13 (quoting (R.
200).

limitations opined in Dr. Reddy's RFC assessment.[2] Generally, like Dr. Reddy's RFC assessment, these records simply list conclusory diagnoses. *See, e.g.*, (R. 181) (noting, in conjunction with a June 10, 2011 office visit, that Adams suffered from radial nerve palsy, degenerative arthritis, DDD in his cervical spine, had a history of hypertension and anxiety, was wearing a splint on his right arm, and was "doing fairly well"; (R. 191) (noting, in conjunction with a January 18, 2011 office visit, that Adams had a "history of hypertension, anxiety, arthritis, [and] neuropathy," was "on meds," and "was doing fairly well"). As the ALJ noted, Dr. Reddy's records contain no physical examination findings supporting the limitations set forth in Dr. Reddy's RFC. To the contrary, the records of fourteen of the seventeen office visits Adams made to Dr. Reddy between July 2010 and September 2011 indicate that the findings of physical exams conducted during those vists were normal. *See* (R. 181, 183, 185, 187, 189, 192, 193, 195, 196, 197, 198, 215, 218, 222). During two of the other three visits, Dr. Reddy noted normal physical exam findings except that Adams was wearing a brace on his hand or arm. (R. 194, 220). During the remaining visit, Dr. Reddy noted normal physical examination findings, except that Adams was wearing a splint on his right hand and had some sort of decreased function in that hand, although the precise words

---

[2] The court notes that Dr. Reddy's records are handwritten and border on illegible.

are illegible.[3]

Moreover, as the ALJ noted, the record does not indicate that Dr. Reddy performed any diagnostic test to confirm his findings. Dr. Reddy's records contain the results of three medical tests: a September 5, 2005 electrocardiogram ("EKG"), (R. 160), a May 5, 2007 EKG, (R. 159), and a February 3, 2009 blood test indicating elevated liver enzymes and slighted elevated hemoglobin levels (R. 157–58). All of these tests were conducted well before Adams' alleged disability onset date of March 19, 2010. More to the point, none of the tests bear on any of Adams' alleged impairments.

Finally, as the ALJ noted, Dr. Reddy's records contain no indications that Dr. Reddy either referred Adams to physical therapy or consulted with a neurologist, and consequently there is no objective evidence from either of those sources supporting the limitations set forth in Dr. Reddy's RFC assessment. Dr. Reddy's records contain at least one reference to physical therapy as part of Adams' treatment plan, (R. 190), and Adams indicated at the hearing before the ALJ that he had received some physical therapy, (R. 29) ("they tried me in therapy, therapist up here said they couldn't do anything for it"), but neither Dr. Reddy's records nor the record at large contain additional information about any

---

[3] The court's best guess is that the records report "[decreased] power in right hand."

physical therapy Adams may have received. Likewise, Dr. Reddy's records contain multiple notations that Adams was seeing a neurologist. (R. 185, 194, 198). But, as with the physical therapy, there is no additional indication in either Dr. Reddy's records or the record at large about any treatment Adams received from a neurologist. The court notes that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a) (stating that "[claimant] must furnish medical and other evidence that [the SSA] can use to reach conclusions about his medical impairment(s)"); 20 C.F.R. § 416.912(c) (stating that a claimant is responsible for "provid[ing] medical evidence showing that [he has] an impairment(s) and how severe it is during the time [he says he is] disabled")).

Some of Dr. Reddy's records note that Adams suffered from weakness in his right arm and hand. (R. 181) (noting "some improvement 2 R. Hand grip"); (R. 196) (noting "history of right arm weakness"); (R. 215) (noting "right arm and hand weakness"). Additionally, Dr. Reddy's records indicate Adams was in pain during several of his office visits. *See* (R. 194) (noting "right arm pain"); (R. 198) (noting "pain all the way into shoulder and neck); (R. 215) (noting "right side and neck pain"); (R. 220) (noting "back and shoulder pain"). Dr. Reddy's records do

not indicate the basis of these notations. Because Dr. Reddy did not conduct any relevant diagnostic tests and his records indicate the physical examinations he conducted yielded almost entirely normal results,[4] the court infers they are based on Adams' subjective complaints. A claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled; there must be medical signs and laboratory findings which show that [he has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." C.F.R. § 404.1529(a). Put simply, the regulations indicate that the notations in Dr. Reddy's records concerning pain and weakness are an improper basis for an opinion regarding Adams' condition because they are not supported by medical signs or laboratory findings.[5] Moreover, even if they are given full credit, these few notations regarding pain and weakness simply do not support Dr. Reddy's contention that Adams' impairments are so severe that he can stand for less that two hours and sit for two hours out of an eight hour work day

---

[4] None of the records from Adams' seventeen office visits with Dr. Reddy between July 2010 and September 2011 indicate a finding of pain during a physical examination, and only one indicates a finding of decreased function in Adams' right hand. (R. 191). Tellingly, there are records from multiple office visits noting both right hand or arm weakness and normal physical examination findings, indicating that a physical examination was not the basis of Dr. Reddy's notations regarding weakness. *See* (R. 196, 215).

[5] Adams contends that "there is nothing in Dr. Reddy's records or opinion to suggest that he based his opinion on [Adams'] subjective complaints alone. Doc. 9 at 13. Turning Adams' argument on its head, as explained above, there is also nothing in Dr. Reddy's records or opinion to suggest he based his opinion on anything other than Adams' subjective complaints.

and must be able to long down for as long as he needs at will.

In sum, Dr. Reddy's records contain largely conclusory diagnoses and a small number of unsubstantiated notations regarding pain and weakness. Consequently, Dr. Reddy's records do not bolster the opinions he set forth in his RFC assessment.

The remainder of the record, which consists of records associated with a April 6, 2010 emergency room visit, (R. 161–75), Dr. Ismail's consultative examination report, (R. 202–13), and the results of x-rays of Adams' cervical spine, (R. 223), also fails to bolster Dr. Reddy's opinions. Adams presented at the Huntsville Hospital emergency room on April 6, 2010 complaining of arm and shoulder pain, (R. 164), and decreased function in his right hand, (R. 172). Doctors there diagnosed Adams with radial nerve palsy, (R. 164), although the record does not indicate that any imaging tests were performed to confirm the diagnosis. The doctors observed that Adams was in "no acute distress [or] obvious discomfort," (R. 174), and that by the time they discharged him, his "symptom[s] [were] gone . . . and [were] mild in context," (R. 173). They also observed that Adams walked with a "normal gait," (R. 172), and that he "left by walking with a steady gait," (R. 173). They noted Adams could "return to work within one day."[6]

---

[6] Adams left his most recent employment on February 2, 2008, (R. 124), and consequently was not employed at the time of this emergency room visit.

(R. 164). In sum, the records from Adams' emergency room visit indicate that the doctors who examined him did not believe his symptoms were severe, observed no impediment to his ability to walk, and, most notably, did not believe Adams' condition would affect his ability to work.

Dr. Ismail conducted a consultative examination of Adams on August 16, 2011. (R. 204). Pursuant to a physical examination, Dr. Ismail noted a number of impairments to Adams right hand, right wrist, and back. (R. 204–05). Dr. Ismail noted that Adams was unable to straighten his right fingers or oppose his right fingers and thumb, and that his ability to move his right fingers and the joints in his right hand was impaired. (R. 204). Dr. Ismail also observed that Adams' right hand grip was weakened, and that the strength of his right forearm was somewhat reduced. *Id.* Additionally, Dr. Ismail observed the absence of deep tendon reflexes in Adams' right wrist and that Adams could not fully flex his right wrist. *Id*. With regards to Adams' back, Dr. Ismail observed that although Adams' spine appeared to be normal, Adams was experiencing mild spasms in his paraspinal muscles and some back pain and tenderness, and that Adams' back flexion range was limited. (R. 204–05). Based on his examination and Adams' medical history, Dr. Ismail opined that Adams could sit for four hours at a time, stand for two hours at a time, and walk for one hour at a time, and could sit for six hours total, stand for four

hours total, and walk for two hours total during an eight-hour work day. (R. 209).

Dr. Ismail also indicated that Adams would not be able to push, pull, or feel with

his right hand, and would be able to reach, handle, and finger with his right hand

only occasionally, reflecting Dr. Ismail's findings regarding impairments to

Adams' right hand and wrist. Clearly, Dr. Ismail's examination and opinion do not

support Dr. Reddy's opinion that Adams could stand for less that two hours and sit

for two hours out of an eight hour work day, and must be able to lie down for as

long as he needs at will. In particular, the court notes that most of the impairments

observed by Dr. Ismail were limited to Adams' right hand and wrist, and

consequently had no bearing on Adams' ability to sit or stand, and would not

trigger a sudden need to lie down.

Finally the record indicates x-rays were taken of Adams' cervical spine on

March 19, 2010. (R. 223). The x-rays indicated DDD and "uncovertebral

osteophyte formation with neural foraminal narrowing at C5–6 and C6–7." As the

ALJ noted, this "is consistent with Dr. Ismail's findings of mild spasm[s], but no

disabling limitations." (R. 17), such as those opined in Dr. Reddy's RFC report.

Like Dr. Reddy's own office records, the rest of the record simply does not

bolster Dr. Reddy's opinion that Adams' impairments placed severe limitations on

his ability to walk, stand, and sit. Unlike Dr. Reddy's records, the remainder of the

record does contain objective medical evidence, namely the observations of the Huntsville Hospital emergency room staff, Dr. Ismail's physical examination findings, and the x-rays of Adams' cervical spine, but none of that evidence indicates Adams suffers from impairments that would cause the limitations opined by Dr. Reddy. Consequently, substantial evidence indicates that the ALJ had good cause for failing to give substantial or considerable weight to the opinions set forth in Dr. Reddy's RFC assessment because those opinions were not bolstered by the evidence in the record.

Adams contends that, to the extent Dr. Reddy's opinion was inconsistent with Dr. Reddy's records, the ALJ had a duty to recontact Dr. Reddy for clarification. Doc. 9 at 15. The regulations in effect at the time the ALJ issued his decision stated that the Commissioner would "seek additional evidence or clarification from [a claimant's] medical source when the report from [the claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. 416.912(e)(1) (2011).[7] The Eleventh Circuit, however, has adopted a

---

[7] Effective March 26, 2012, the SSA eliminated its requirements that its adjudicators recontact medical sources to clarify inconsistencies. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,651 (Feb. 23, 2012) (to be codified at 20 C.F.R. pts. 404, 416).

narrow view of this requirement. In this circuit, a court seeking to determine whether an ALJ's failure to recontact a medical source is guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). "The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports [his] allegations of disability.'" *Id.* (quoting *Brown*, 44 F.3d at 936 n. 9). The record does not indicate, and Adams does not allege that Dr. Reddy is in possession of additional records that would resolve any inconsistency between Dr. Reddy's opinion and his office records. Rather, Adams seems to argue that the ALJ had a duty to recontact Dr. Reddy to solicit an explanation of Dr. Reddy's opinion, a contention that has no support in this circuit's case law. Consequently, the ALJ did not err by failing to recontact Dr. Reddy to clarify any inconsistency between his records and his opinion.

Additionally, Adams contends that the ALJ erred because "[f]or treating sources, the rules require that [the ALJ] make every reasonable effort to recontact such sources for clarification when they provide opinion on issues reserved to the Commissioner and the basis for such opinions are not clear." Doc. 9 at 15 (quoting SSR 96-5p). Issues reserved to the commissioner include "[w]hat an individual's

RFC is" and "[w]hether an individual is 'disabled' under the Act." Dr. Reddy's RFC assessment does not state Adams' RFC. *See* (R. 199–201). It merely evaluates his physical capabilities, *id.,* and the ALJ concluded that evaluation indicated Adams could "perform a range of light work with additional and significant limitations," (R. 18). Moreover, Adams, not Dr. Reddy, contends that the limitations on Adams' ability to sit and stand set forth in the evaluation indicate that Adams is disabled. Doc. 9 at 13. Consequently, Dr. Reddy's RFC does not provide an opinion on issues reserved to the Commissioner, a necessary condition to trigger a duty to recontact a treating physician under SSR 96-5p. Moreover, even if Dr. Reddy's RFC assessment could be construed as containing inappropriate opinion evidence, this circuit evaluates the duty to recontact medical sources under SSR 96-5p pursuant to the same standard that it evaluates the duty to recontact medical sources under former C.F.R. 416.912(e): there is a duty to recontact if "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Johnson v. Barnhart*, 138 F. App'x 186, 189 (11th Cir. 2005) (quoting *Brown*, 44 F.3d at 935). As previously stated, the record does not indicate any such evidentiary gap, nor does Adams argue that one exists. Therefore, the ALJ did not err by failing to recontact Dr. Reddy pursuant to SSR 96-5p.[8]

---

[8] In addition to his RFC assessment and office records, the record also contains an undated letter from Dr. Reddy stating that "John Adams is under my care. I have recommended

In sum, good cause existed for the ALJ to discount the opinions of Adams' treating physician, and the ALJ did not err by failing to recontact the treating physician for clarification regarding those opinions.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Adams is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is affirmed. A separate order in accordance with the memorandum of decision will be entered.

---

he apply for disability and he can not work at this time." (R. 179). The letter is accompanied by a prescription slip dated January 26, 2011 stating that "pt has degenerative arthritis and neuropathy (Lyrica helps somewhat) [right] arm pain w/ radial nerve palsy and wears splint to help with support since he has . . . all the movement/use he will ever have." (R. 180). The ALJ gave no weight to the undated letter because Dr. Reddy "offered no supporting document for his opinion other than unsupported diagnoses. Furthermore, whether or not the claimant is disabled is an issue reserved for the Commissioner of Social Security."(R. 18). Adams does not contest the ALJ's findings regarding the letter and does not explicitly refer to it in his arguments regarding the ALJ's duty to recontact Dr. Reddy. In the interest of thoroughness, the court notes that while whether a claimant can work is certainly an opinion reserved to the Commissioner, *see Johnson*, 138 F. App'x at 188, 189 (indicating that a treating physician's notation that a claimant could not work was an opinion reserved to the Commissioner); SSR 96-5p (stating that [w]hether an individual is 'disabled' under the Act" is an opinion reserved to the Commissioner), the lack of an evidentiary gap in the record, as discussed above, releases the ALJ from any obligation imposed by SSR 96-5p to contact Dr. Reddy for clarification regarding the basis of that opinion.

Done this 24th day of January, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE